UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                  CASE NO.  8:21-cr-94-SDM-AEP
                                              8:22-cv-2490-SDM-AEP

HENRY LEE WHITE, III,
_____

### ORDER

Henry Lee White, III, moves under 28 U.S.C. § 2255 to vacate his convictions and 293-month sentence for sex trafficking and being a felon in possession of ammunition. He claims counsel rendered constitutionally ineffective assistance. He is entitled to no relief.

### BACKGROUND

Under a plea agreement White pleaded guilty to one count of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(1) (Count One), and possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Four). (Crim. Doc. 47 at 1)  The United States agreed to dismiss the remaining charges from the indictment. (*Id.* at 3)

The presentence report calculates a total offense level of 33, a criminal history category of VI, and an advisory guidelines range of 235 to 293 months. (Crim. Doc. 60 at ¶ 144)  The report applies a two-level enhancement under U.S. Sentencing Guidelines § 2A3.1(b)(4)(B) because White's victim sustained "serious bodily

injury." (*Id*. at ¶ 46)

The district court imposed concurrent sentences of 293 months for the sex-trafficking offense and 120 months for the ammunition-possession offense. (Crim. Doc. 68) In imposing the sentence, the district court observed that the nature of the offense was "repugnant to the law and repulsive to the community." (Crim. Doc. 77 at 44) White filed no appeal.

White moves to vacate his convictions and sentence and raises four grounds for relief.[1] He claims that counsel was ineffective for (1) not conducting a meaningful pre-trial investigation before advising him to plead guilty, (2) not objecting to the bodily-injury sentencing enhancement, (3) not investigating an entrapment defense, and (4) not arguing that his § 922(g) conviction violates his Second Amendment rights.

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the

---

[1] An earlier order concludes that "this action proceeds without a claim that trial counsel rendered ineffective assistance by not appealing." (Civ. Doc. 14 at 2)

> Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

White must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, White must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. White cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); s*ee also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## DISCUSSION

*Grounds One and Three*

In Ground One White claims that counsel neglected to conduct a meaningful pretrial investigation before wrongfully advising him to plead guilty. (Civ. Doc. 3 at 4; Civ. Doc. 12 at 1) According to White, a proper investigation would have shown that the victim was not a minor but instead was a "willing [adult] participant" who "enticed and coerced [him] to go on a road trip and threatened [him][.]" (Civ. Doc. 3 at 4) In a related claim at Ground Three, White claims that counsel failed to investigate an entrapment defense. (*Id*. at 6–7) He complains that "law enforcement and the alleged victim/accomplice set up a sting to ensnare [him] with reckless disregard for [his] right to due process." (*Id*. at 6)

In her responsive affidavit, counsel avers that she explained to White that he was charged with sex trafficking of an adult by force, fraud, or coercion in violation of § 1591. (Civ. Doc. 7-1 at 2) According to counsel, White fully understood the charges against him and decided to plead guilty. (*Id*.) And counsel explains that she lacked a good faith basis to pursue an entrapment defense. (*Id*.)

Counsel's duty to conduct a pre-trial investigation is governed by a reasonableness standard. *Mitchell v. Kemp*, 762 F.2d 886, 888–89 (11th Cir. 1985). Counsel must perform a "reasonable" investigation or make a "reasonable" decision that such an investigation is not warranted. *Id*. at 888. Counsel's decisions regarding the level of investigation warranted must be viewed with a strong presumption of reasonableness at the time the decision regarding investigation was made, not with

the benefit of hindsight. *Strickland*, 466 U.S. at 689. No absolute duty exists to investigate particular facts or a certain line of defense. *Chandler*, 218 F.3d at 1317. "The decision whether to present a line of defense, . . . 'is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable.'" *See Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002).

White claims that a meaningful investigation would have shown that the victim was not a minor but a willing adult participant who assisted law enforcement in wrongfully entrapping him. This claim fails because White did not plead guilty to sex trafficking a minor. Section 1591, which is titled "Sex trafficking of children *or* by force, fraud, or coercion," criminalizes the sex trafficking of a child, or as in White's case, sex trafficking of an adult "by means of force, threats of force, fraud, or coercion . . . or by any combination of such means." *Id*. at (b)(1) (emphasis added in title). White pleaded guilty to sex trafficking of "Victim 1," who is an adult. (Crim. Doc. 47 at 2) White cannot show that counsel neglected to adequately investigate, or establish, that the victim is a child because the victim is, in fact, an adult, and White was both charged with, and pleaded guilty to, sex trafficking an adult.

White fails to show that counsel's decision not to pursue an entrapment defense was unreasonable. "A successful entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant." *Rolon v. United States*, No. 09-20710, 2015 WL 13898763, at *15 (S.D. Fla. June 15, 2015) (citing *Brown v. United States*, 43 F.3d 618, 623 (11th Cir. 1995)). "In order to show government inducement, the defendant must show

more than that the agent simply sought out or initiated contact with the defendant and proposed an illicit transaction." *Id*. (citing *United States v. Ventura*, 936 F.2d 1228, 1233 (11th Cir. 1991)). "Rather, the defendant must show that 'opportunity plus something like excessive pressure or manipulation of a non-criminal motive.'" *Id*. (quoting *Brown*, 43 F.3d at 623). "Without some element of 'excessive pressure or manipulation,' there is no government inducement, and thus no entrapment." *Id*. (quoting *Brown*, 43 F.3d at 623).

Counsel did not pursue an entrapment defense because she lacked a good faith basis for the defense. (Civ. Doc. 7-1 at 2)  The record supports counsel's assessment that no entrapment defense was available given the evidence of White's coercion of the victim to engage in commercial sex from June of 2020 to July of 2021.  As stated in the factual basis, to which White stipulated under oath, White used threats of violence and physical violence to control the 20-year old victim for several months. (Crim. Doc. 47 at 17–23)  An investigation uncovered "hotel receipts, escort advertisements, photos of Victim 1's injuries, geolocation data, [and] surveillance video" that prove sex trafficking of the victim. (*Id*.)  White "reserve[d] the hotel room under his name and pa[id] for them using cash or credit cards," drove the victim to the hotel, and "collected the money from [the victim] before he allowed her into the car." (*Id*. at 21)   In January of 2021, law enforcement conducted a joint undercover operation to recover the victim. (*Id*. at 18)  Law enforcement observed White deliver the victim to a hotel, exit the hotel, and then return to the hotel. (*Id*.) Thus, the stipulated facts show that White was not unlawfully induced, and he was

predisposed to engage in the criminal activity with which he was charged. Counsel was not ineffective for not pursuing a meritless entrapment defense. *See Brownlee*, 306 F.3d at 1060 ("[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly.") (citation omitted)).

This claim fails for the additional reason that White cannot show he was prejudiced by counsel's decision not to investigate or pursue an entrapment defense. To show prejudice when a defendant challenges his guilty plea based on ineffective assistance of counsel, he must show a reasonable probability that but for the ineffective assistance, "he would not have pleaded [guilty] . . . and would have insisted on going to trial." *Durham v. Sec'y, Dep't of Corr.*, 834 F. App'x 843, 847 (11th Cir. 2020). White claims he would have insisted on going to trial if counsel conducted an adequate pre-trial investigation. (Civ. Doc. 3 at 4; Civ. Doc. 12 at 3) However, the United States' evidence against White, as summarized in the factual basis supporting White's guilty plea, was substantial, and with one exception, he admitted these facts.

Furthermore, White benefited significantly by pleading guilty. Under the plea agreement, the United States agreed to dismiss Counts Two and Three from the indictment, which charged him with violations of 18 U.S.C. §§ 2421(a) and 2422(a). (Crim. Doc. 47 at 3) The United States agreed not to oppose his request for a downward adjustment for acceptance of responsibility. (*Id.* at 4–5) White cannot

show that he was prejudiced by counsel's performance because he has not shown that a decision to reject the plea agreement would have been rational. *See McEarchen v. United States*, 859 F. App'x 880, 882 (11th Cir. 2021) (concluding that a decision to reject a plea bargain was not rational when the petitioner "accepted an advantageous plea arrangement . . . [which] eliminated the risk that he would receive a sentence exceeding ten years because the government agreed to forgo charging him for other federal crimes").

Finally, to the extent White complains that counsel wrongfully advised him to plead guilty, or he did not understand the nature of the offenses to which he pleaded guilty, the claims are contradicted by the record of his sworn statements at the plea hearing. The magistrate judge asked if White read and understood the charges against him, to which White responded, "Yes." (Crim. Doc. 79 at 7) When asked whether he had "a fair and full opportunity to review all the facts and evidence in [his] case in consultation with [counsel] [before] making any decision to plead guilty," White responded, "Yes." (*Id*. at 9) White confirmed that he was "fully satisfied with the advice and representation [he] received in the case." (*Id*.) After the magistrate judge read the elements of the charges, White had no questions. (*Id*. at 30–31) The magistrate judge found White's guilty plea to be knowing, intelligent, and voluntary, and White made no objection to this finding. (*Id*. at 43)

"Solemn declarations in open court," such as the declarations White made during the plea hearing, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.

1994) ("There is a strong presumption that the statements under oath at a plea colloquy are true."). "[T]he representations of the defendant, his lawyer, and the prosecutor at a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74. "[W]hen a defendant makes statements under oath . . . , he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

White offers no argument or evidence to disavow his declarations under oath that he understood he was pleading guilty to both sex trafficking of an adult by force, fraud, or coercion and being a felon in possession of ammunition. White admits that "[e]ven though [he] was totally unsatisfied with [counsel's] representation he did not voice that to the Court." (Civ. Doc. 12 at 3) Because his claim is affirmatively contradicted by the record of the plea hearing, White has not carried his "heavy burden to show his statements were false." *Rogers*, 848 F.2d at 168.

*Ground Two*

White claims counsel was ineffective at sentencing for not objecting to the bodily-injury enhancement because no medical evidence supports the enhancement. And, he faults counsel for not objecting to the reference in the presentence report that he branded his victim with tattoos of his name. He is not responsible for branding his victim, White argues, because the victim received the tattoo while she was incarcerated and not at his direction. (Civ. Doc. 3 at 5–6; Civ. Doc. 12 at 2) In her responsive affidavit, counsel explains that she successfully advocated to reduce the bodily-injury enhancement by two levels and that she lacked a good faith basis to

- 10 -

object to the branding reference. (Civ. Doc. 7-1 at 2–3)

In describing the offense conduct, the initial presentence report specified that "White branded Victim 1 with his initials, 'HLW,' tattooed her with a crown on her left hand, and tattooed 'Henry' on her left leg." (Crim. Doc. 54 at ¶ 28) The initial presentence report applied a four-level enhancement under U.S.S.G. § 2A3.1(b)(4)(A) because the victim sustained "permanent or life-threatening bodily injury." (Crim. Doc. 54 at ¶ 45) The enhancement was applied because (1) the victim had "two black eyes, possible broken nose, bruises, and a lump on the back of her neck[,]" (2) White branded the victim, and (3) White "put a gun in [the victim's] mouth and played 'Russian Roulette.'" (*Id.*)

Before sentencing, counsel objected to both the branding reference in the description of the offense conduct and the four-level bodily-injury enhancement. She argued that the victim "did not sustain any permanent or life-threatening bodily injury." (Civ. Doc. 7-1 at 2–3; Crim. Doc. 60 at 63–64) And, she argued, "Mr. White denies 'branding' the victim. [The victim] got the tattoos on her own while she was incarcerated in Virginia." (Crim. Doc. 60 at 63) During a position-of-the-parties meeting, counsel successfully advocated to reduce the bodily-injury enhancement by two levels. (*Id.*) However, "after a subsequent review of discovery . . . , counsel in good faith did not proceed with the initial objection to the factual basis describing the victim's tattoos as a form of 'branding.'" (*Id.*)

In describing the offense conduct, the final presentence report specifies that the victim received tattoos of White's name while incarcerated and that "White asked

- 11 -

[the victim] to get [the tattoos] to show loyalty and also told her specifically where to get the tattoos." (Crim. Doc. 60 at ¶ 28)  Also, the final presentence report applies a two-level enhancement under U.S.S.G. § 2A3.1(b)(4)(B) because the victim sustained "serious bodily injury." (Crim. Doc. 60 at ¶ 46)  The victim's injuries are described as "two black eyes, a nasal bone fracture, bruises, and a lump on the back of her neck," as well as a "long line that looked like a whip mark on her back." (*Id.*)

      White cannot show that counsel performed deficiently or that he was prejudiced by counsel's performance.  The record shows that counsel successfully advocated to reduce the four-level bodily-injury enhancement by two levels because the victim's injuries, although serious, were not permanent or life-threatening.  White received a two-level bodily-injury enhancement not because of counsel's ineffectiveness but because, as he admitted in the plea agreement, White "subjected [his victim] to physical violence" to force her "to engage in commercial sex[.]" (Crim. Doc. 47 at 18, 20)  Specifically, White admitted to the inflicting the following bodily injury on the victim (*id.* at 20):

> The defendant used his revolver to beat Victim 1. He then removed four of the five bullets from the revolver and played Russian Roulette with he while holding the fun to her head and pulling the trigger. Victim 1 stated the defendant did this about six or seven times. He then threw Victim 1's phone at her face, causing a laceration on the center of her forehead in between her eyebrows. At the time Victim 1 was recovered by law enforcement in January 2021, she had an injury on her left knee that he sustained after the defendant threw her to the ground in a hotel.

Furthermore, White admitted that his name was tattooed on the victim's hand and leg. (*Id.* at 21)  Given these admissions to inflicting bodily harm on the victim,

White cannot show that counsel was ineffective for not objecting to the two-level enhancement for serious bodily injury. *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit.").

White suggests that counsel should have argued that the two-level bodily-injury enhancement was improper because no medical records documented the victim's injuries. However, the victim's bodily injuries need not be documented by medical records to qualify as serious. "Serious bodily injury" is defined as an injury "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; *or* requiring medical intervention[.]" U.S.S.G. § 1B1.1 comment n. (1)(M) (emphasis added). The victim's injuries qualify as serious bodily injuries because, as the district court observed during sentencing, the victim suffered "physical injury" but "no life-threatening injury." (Crim. Doc. 77 at 23–24) Counsel successfully argued that the victim's injuries were serious but not permanent or life-threatening, and White's undeveloped claim "that a different strategy would have been better does not meet his burden under *Strickland*." *Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11h Cir. 2022) (citing *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.")).

Finally, White cannot show that counsel's decision not to pursue an objection to the branding reference was deficient because White admits that the victim was

branded with tattoos of his name. Nor can White show counsel's decision was prejudicial because White's sentence was not enhanced for branding the victim. Rather, the final presentence report describes White branding the victim in the description of the offense conduct.

***Ground Four***

White claims that counsel was ineffective for not arguing that his § 922(g) conviction violates his Second Amendment right to bear arms. (Civ. Doc. 3 at 10; Civ. Doc. 12 at 3) White asked counsel to argue that "his simple possession of a firearm did not violate the laws of the United States" but counsel refused to advance that argument. (Civ. Doc. 12 at 3)

Binding precedent forecloses this claim. *United States v. Dubois*, 94 F.4th 1284, 1291–93 (11th Cir. 2024), explicitly rejects the Second Amendment challenge to the constitutionality of § 922(g) that White advances. *Dubois* holds that *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), which upholds the constitutionality of § 922(g)(1), remains binding. *See also United States v. Cole*, 2025 WL 339894, at *4 (11th Cir. Jan. 30, 2025) ("[R]egulations prohibiting firearm possession by convicted felons are 'presumptively lawful.'") (quoting *United States v. Rahimi*, 602 U.S. 680, 692 (2024)); *Morelock v. United States*, No. 22-13439, 2025 WL 66434, at *2 (11th Cir. Jan. 10, 2025) ("[Circuit] precedents upholding the constitutionality of § 922(g)(1) remain good law after [*New York State Rifle & Pistol Ass'n v.*] *Bruen*, 597 U.S. 1 (2022)."). White's proposed Second Amendment challenge to the constitutionality of § 922(g) lacks merit, and counsel did not perform deficiently by not advancing a

meritless Second Amendment challenge to the § 922(g) conviction. *See Card*, 911 F.2d at 1520.

White's motion under 28 U.S.C. § 2255 (Civ. Doc. 3) is **DENIED**. The clerk is directed to enter a judgment against White, close this case, terminate any pending motions, and enter a copy of this order in the criminal case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

White is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, White must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, White is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. White must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 18th, 2025.

                                                                                           STEVEN D. MERRYDAY
                                                                       UNITED STATES DISTRICT JUDGE